UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

FLORENCE DIVISION

| | |
|---|---|
| ANTHONY REDDICK ) Plaintiff, ) ) ) v. ) ) A.O. Smith Corporation ) ) Defendant. ) _____ ) | Civil Action No.:4:21-4201-RBH-SVH  **ORDER** |

Pending before the Court is Defendant's motion for summary judgment. ECF No. 43. This matter is before the Court with the Report and Recommendation ("R&R") of United States Magistrate Judge Shiva V. Hodges, who recommends that the court grant Defendant's motion and dismiss Plaintiff's family medical leave act ("FMLA") and race discrimination/Title VII causes of action. ECF No. 57 at 22. Plaintiff filed objections to the Magistrate Judge's R&R, ECF No. 59, and Defendant filed a Reply, ECF No. 61. The Court has reviewed all filings and adopts the Magistrate Judge's recommendation to grant summary judgment to Defendant on all of Plaintiff's causes of action. Therefore, Defendant's motion for summary judgment is granted.

**Background**

The R&R adequately sets forth the factual background of this case. However, to briefly summarize, Plaintiff's Wife had an upper GI endoscopy on Tuesday, November 17, 2020. ECF No. 43-2 at 47:6-10, 49:19-25; ECF No. 52-1 at 10. Following this procedure, Plaintiff's Wife began experiencing abdominal pain on Wednesday, November 18th. ECF No. 43-6. In dispute is whether Plaintiff's Wife also began experiencing COVID-19 symptoms, namely loss of taste and smell at this time. ECF No. 43-1 at 6-8; ECF No. 52 at 3-5. Plaintiff continued to work on November 17, 18, and 19. ECF No. 43-2 at 46:22-47:55. Plaintiff returned home from work on the 19th and subsequently took his Wife to the hospital as she was ill. ECF No. 43-2 at 47:10-

1

48:21. Plaintiff's Wife tested positive for COVID-19 following her admission to the hospital. ECF No. 52-1, ECF No. 43-2 at 49:4-10. Plaintiff informed Defendant of his Wife's COVID positive test and that he was in contact with his wife while she was experiencing COVID symptoms. ECF No. 43-4 at ¶ 7. Defendant understood Plaintiff to have attended work while he was aware his Wife was experiencing COVID symptoms, but Plaintiff disputes that this is what he communicated to Defendant. ECF No. 43-2 at 51:11-52:25; ECF No. 43-2 at 47:10-48:21. Defendant later, on December 1, 2020, terminated Plaintiff for violating the Defendant's COVID protocol. ECF No. 43-2 at 57:4-17.

### **Standard of Review**

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber,* 423 U.S. 261, 270-71 (1976). The Court must engage in a de novo review of those portions of the R&R to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). Even objections that "merely 'restate[] all of the [Plaintiff's] claims'" may be considered "specific," so long as such objections "alert[] the district court that [Plaintiff] believed the magistrate judge erred in recommending dismissal of those claims." *See Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023) (citing *Martin v. Duffy*, 858 F.3d 239 (4th Cir. 2017)). In the absence of specific objections to the R&R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 199-200 (4th Cir. 1983).

### **Summary Judgment Standard**

2

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2010). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record...; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When no genuine issue of any material fact exists, summary judgment is appropriate. *See Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id*. However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"Once the moving party has met [its] burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hospital Corp. Of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, unsupported speculation, or conclusory allegations to defeat a motion for summary judgment. *See Baber*, 977 F.2d at 875. Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *Celotex Corp. V. Catrett*, 477 U.S. 317, 322 (1986).

## **Discussion**

Plaintiff lodges objections to the Magistrate Judge's R & R, often merely advancing factual contentions of little consequence under a summary judgment standard. While this Court need not "relitigate entire cases to determine the basis of [Plaintiff's]" objections that are considered general, objections that pinpoint what the litigant finds to be specific errors in the Magistrate's proffered findings and recommendations, even if mere recitations of little consequence, still implicate a duty for this Court to conduct a de novo review.

This Court is confronted with reviewing Plaintiff's twelve objections to the R & R.

Plaintiff's objections are proffered rather unsystematically, for reference, the Court provides the captions of each objection, with comments to convey this Court's understanding of each objection in brackets, to provide a cursory detailing of Plaintiff's positions.

> I. The R&R spends most of the legal analysis on the Title VII race discrimination to the effect of disregarding the extreme temporal proximity causation and other pretext arguments raised as proof of Plaintiff's FMLA claim.
>
> II. The R&R erred by narrowing Plaintiff's pretext arguments from the eight pieces of evidence listed by him to two and then none.[R & R categorized, for the purpose of a pretext inquiry, into two categories.]
>
> III. Plaintiff made a prima facie showing of FMLA Retaliation [Plaintiff argues he satisfied FMLA requirements to request leave, and his termination prior to expiration of his leave evidences temporal proximity and is a demonstrative showing that Defendant retaliated.]
>
> IV. The R&R erred in finding that Mrs. Reddick's emergency room records show she was experiencing COVID-19 symptoms prior to December 19, 2023 [All symptoms, including loss of taste and smell, are listed on emergency room report as occurring "since" the endoscopy, obscures onset of actual COVID symptoms.]
>
> V. The Facts section of the R&R acknowledges a pivotal fact that supports Plaintiff's claims, but fails to apply it to the legal analysis [R & R acknowledges that Mrs. Reddick was released in good condition, and Plaintiff argues this creates a dispute of material fact as to when Mrs. Reddick became sick.]
>
> VI. Mrs. Reddick's affidavit is relevant as corroborating evidence of when her COVID 19 symptoms began [Asserts that COVID symptoms did not develop until "later in the day on November 19th."]
>
> VII. The R&R acknowledges Mrs. Reddick's sworn testimony, but then fails to apply that as persuasive evidence to deny judgment as a matter of law.
>
> VIII. Plaintiff showed Defendant's proffered reason for termination was pretext because the facts show that Plaintiff did not violate company policy. [Plaintiff argues he followed COVID protocol, and was not terminated until he was conveniently nearing return from FMLA leave.]
>
> IX. Plaintiff's evidence supports his argument that Defendant's reason for termination, that he violated COVID safety protocols, was not "honest". [Plaintiff claims the R & R's ultimate holding is incongruous with its reliance on *Anderson v. Ziehm Imaging, Inc.*, where summary judgment was denied.]
>
> X. *Love-Lane* does not dispose of Plaintiff's claims.
>
> XI. Ronnie Sigmon is a valid comparator for Plaintiff's race discrimination claim.
>
> XII. The R&R acknowledged two witnesses have conflicting evidence but then, in error, weighs that testimony to make a factual determination that should be left solely to a jury.

Plaintiff's objections generally dispute the R & R's analysis of Plaintiff's FMLA and Title VII

claims. After giving full attention to these objections, this Court overrules all of Plaintiff's objections and grants Defendant's motion for summary judgment.[1]

### a) FMLA Retaliation

Plaintiff's first, third, and eighth objections are driven at the fact that Plaintiff was terminated while still on FMLA leave. Plaintiff's objections frame this temporal proximity as sufficient to create a genuine dispute of material fact as to whether Defendant's alleged reason for terminating Plaintiff, founded in Plaintiff violating COVID protocol, was pretextual.

As properly identified in the Magistrate's R & R, FMLA retaliation claims are typically analyzed in the same manner as a Title VII discrimination claim, utilizing the *McDonnel Douglas* burden shifting framework. ECF No. 57 at 19 (citing *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 717 (4th Cir. 2013)). Accordingly, a Plaintiff must establish a prima facie case of retaliation to shift the burden to the Defendant to advance a non-retaliatory reason for its action. *Id*. Once again, the R & R directly hits the target by stating that "if the Defendant advances a lawful explanation for the alleged retaliatory action, Plaintiff must demonstrate Defendant's reason for taking the adverse employment action was pretextual." *Id*. Pretext may be established by showing that Defendant's "proffered explanation is unworthy of credence, thus supporting an inference of [retaliation], or offer other forms of circumstantial evidence sufficiently probative of intentional [retaliation]." *Dugan v. Albemarle Cnty. Sch. Bd.*, 293 F.3d 716, 721 (4th Cir. 2002).

Plaintiff's third objection irrationally attempts to rely on the R & R to claim a "prima facie case of FMLA retaliation" has been established. ECF No. 59 at 3-4. Instead, the R & R was prepared to find that Defendant had proffered a lawful explanation for Plaintiff's termination. At this point, a prima facie showing became insufficient to survive a motion for summary judgment, as Defendant had shifted the burden back to the Plaintiff.

Nonetheless, Plaintiff still had a chance to rebut Defendant's showing, and attempts to do

---

[1]The forthcoming analysis concludes that, in viewing the entirety of the record, no rational jury could find for plaintiff on his two causes of action. While not central to this Court's analysis, it must be noted that the outlined chain of events took place in the midst of a novel, deadly pandemic. Similar to all other members of society, employers faced unprecedented circumstances in attempting to continue to operate as a viable business, maintaining employment and output, while also protecting the workplace and employees from an increased risk of exposure.

so with an argument cemented solely in "temporal proximity[2]." Plaintiff makes this argument in his first and eighth objections and asks this Court if this is "not a reason to deny summary judgment" then "what temporal proximity causation would ever be enough?" While temporal proximity is relevant in establishing a prima facie case of FMLA retaliation, the same level of import has not been extended to establishing pretext.[3] Plaintiff's first and eighth objections do not properly apply this guidance, which requires the Court to consider temporal proximity alongside any other evidence that the Plaintiff has submitted as either probative of the Defendant's intentions or suggestive of retaliation. *See Dugan v. Albemarle Cnty. Sch. Bd.*, 293 F.3d 716, 721 (4th Cir. 2002).

With this guidance in mind, this Court will consider temporal proximity alongside Plaintiff's second objection, which re-alleges eight pieces of "evidence"[4] to support a finding of pretext:

(1) the medical documentation proves that Plaintiff was not guilty of the COVID safety protocol allegation, (2) the decision to terminate from Plaintiff sourced from all white management outside of Plaintiff's protected class (ECF 43-7); (ECF 43-3); (3) the HR Manager willfully failed to verify the accurate information as to when Mrs. Reddick became ill from COVID-19 with symptoms arriving later in the day on November 19, 2020 (ECF 43-2); (Taushia Reddick Aff.), (4) the HR Manager inaccurately premised the termination process upon the false assumption that Mrs. Reddick was already sick from COVID-19 when Plaintiff worked on November 17, 18, and 19, 2020 (ECF 43-2); (Taushia Reddick Aff.), (5) none of the other decision makers involved in the termination decision communicated with Plaintiff prior to authorizing his termination effective December 1, 2020 (ECF 43-3), (6) all management knew that Plaintiff was a long standing employee of 27 years and that such a long history of employment showed Plaintiff's reliability and trustworthiness (ECF 43-7); (ECF 43-3); (ECF 43-4); (30(b)(6) Dep. Ex. 3), (7) that a white comparator, Ronnie Sigmon, remained employed despite

---

[2]Plaintiff's first objection alleges he was "terminated while on FMLA protected medical leave," and that is a "sufficient reason to deny summary judgment as to the FMLA claim." ECF No. 59 at 2.

[3]In *Williams v. Ceberronics, Inc.*, the Fourth Circuit noted that "[a]ppellant's proof of a causal connection between the protected activity and her discharge essentially was that she was fired after her employer became aware that she had filed a discrimination charge. While this proof far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality. However, despite the fact that appellant has made her prima facie case, we hold that she has not proven retaliatory discharge." *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989). *See also* Jones v. UnitedHealth Grp., Inc., 802 F. App'x 780, 783 (4th Cir. 2020) ("temporal proximity, without more, does not support a finding of pretext.").

[4]This Court notes that the FMLA Retaliation analysis hereinafter is narrowed to Plaintiff's first, third, and fourth pieces of "evidence," as the other five are, in this Court's opinion, better suited to be addressed as part of the Court's Title VII analysis.

> violations of Defendant's COVID safety protocols (ECF 43-2, 40:17–42:19), and (8) that Plaintiff's circumstances, which were not a violation of Defendant's COVID safety protocols was distinguishably different from the other terminations related to COVID (30(b)(6) Ex. 19). In sum, Plaintiff provides evidence that race was a "motivating factor" in terminating his employment. This evidence suffices to merit a mixed-motive denial of summary judgment. (ECF No. 52, p. 20.)
> ECF No. 59 at 3.

The "evidence" provided in one, three, and four deal solely with whether or not Plaintiff actually violated Defendant's COVID protocol. This Court finds it appropriate to consider this "evidence" alongside Plaintiff's fourth, fifth, sixth, seventh, and twelfth objections. Collectively, the Plaintiff's "evidence" and objections are an attempt to claim that the Magistrate failed to consider factual disputes and evidence that suggest Plaintiff did not violate Defendant's COVID protocol, thus, demonstrating Defendant's reason for taking the adverse employment action was pretextual.

Even alongside a "temporal proximity" based argument, this Court cannot agree with Plaintiff that there is a genuine dispute of material fact when it comes to the issue of pretext. While there is certainly a dispute of fact as to whether or not Plaintiff actually violated Defendant's COVID protocol, these disputes are not "material." [5] The Fourth Circuit has made clear that pretext inquiries under a Title VII framework are focused on determining whether the Defendant's proffered reason for termination was pretextual, "it is not [the Court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998). While it would certainly be unfortunate if a Plaintiff was "fired for misconduct [he] did not actually engage in ... a good-faith factual mistake is not the stuff of which Title VII violations are made." *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 903 (4th Cir. 2017).

Defendant represented that Plaintiff "was terminated for violation of the Company's COVID-19 safety rules and policies." ECF No. 43-1 at 10. Plaintiff has admitted that he "informed his supervisor, Sam Johnson" of "the need to quarantine due to his wife's COVID-19

---

[5] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986) ("As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.")

diagnosis." ECF No. 52 at 5. Sam Johnson has provided this Court with a sworn declaration that this conversation occurred on November 20, 2020, and that during the conversation Plaintiff stated that "he had come to work while his wife was ill and had COVID-symptoms." ECF No. 43-4 at 3.

Defendant's HR Manager, Wanda Herron, read her handwritten notes into the record during her Rule 30(b)(6) deposition, the notes and testimony provide that Plaintiff

> called 11/20 saying his wife had been admitted to the hospital and was COVID Positive. He said that she started feeling sick on Tuesday after being at a doctor appointment. He said she was sick Wednesday too, complained of a headache, no taste or smell. He worked Tuesday, Wednesday and Thursday. I questioned him on why he had come to work if his wife was symptomatic.

ECF No. 43-5 at 11:24-12:9, 24:6-26:16; ECF No. 43-2 at 115; ECF No. 43-7 ¶ 9. Ms. Herron testified to the fact that these notes were taken "sometime after the lawsuit was filed by" Plaintiff. ECF No. 43-5 at 8. Defendant has further supplemented this evidence with Defendant A.O Smith Corporation's "COVID-19 Daily Contact Tracker," maintained by Ms. Herron. A section of this document, dedicated to Mr. Reddick and dated 11/20/20, states "Wife was sick on Wednesday, complained about headache, no smell taste." ECF No. 52-1 at 6. Ms. Herron provided in her deposition that the notes in this spreadsheet were taken on the dates listed next to the notes. The spreadsheet further provides that on 12/01/20, Shawn Schmonsky, Defendant's Vice President of Human Resources, approved termination of Plaintiff for "violating COVID policy." ECF No. 43-5 at 7; ECF No. 52-1 at 6.

It is entirely conceivable that on November 20, 2020, Mr. Reddick spoke on the phone with both Mr. Johnson and Ms. Herron and his statements were misinterpreted much like the heavily disputed hospital record.[6] Mr. Reddick may have sought to inform the Defendant's employees that his wife had only stomach pain on Tuesday and Wednesday, but developed a headache and loss of taste/smell on Thursday while Plaintiff was at work. Yet, it is clear, this is not the understanding Defendant drew from these conversations. Rather, Defendant's understanding was the Plaintiff was aware of all of his wife's symptoms when he continued to

---

[6]*See generally* ECF No. 57 at 1-6; ECF No. 57 at FN 4.

work on Wednesday and Thursday. It was upon this understanding that Defendant concluded Plaintiff had violated the company COVID protocol, thus, Plaintiff was terminated.

As earlier provided, the substantive law identifies those facts considered material. In this instance, it is not the job of this Court to decide if Defendant's understanding of facts was "accurate," as a good-faith factual misunderstanding or "mistake is not the stuff of which Title VII violations are made." *See Villa* at 903. Instead, in order to survive summary judgment, Plaintiff must display a genuine dispute as to Defendant's proffered reason for terminating Plaintiff, by showing the proffered reason is "unworthy of credence" or that there is existing "evidence sufficiently probative of [intentional] retaliation." *Dugan v. Albemarle Cnty. Sch. Bd.*, 293 F.3d 716, 721 (4th Cir. 2002).

Plaintiff's arguments, merely attacking the accuracy and understanding upon which Defendant, in good-faith, based Plaintiff's termination, do not dispute material facts. Plaintiff's contentions fail to repudiate the veracity of Defendant's understanding of the time line of Plaintiff's scenario or of the referenced notes and spreadsheet. Therefore, even if there was a factual misunderstanding underlying Plaintiff's termination, Plaintiff has not shown that misunderstanding was found in "bad faith." Consequently, Plaintiff has failed to show that Defendant's proffered reason for termination, violation of COVID protocol, is "unworthy of credence" and has failed to provide any evidence indicative of intentional retaliation. This Court is inclined to agree with the Magistrate Judge, and finds there has been no showing that Defendant's reason for terminating Plaintiff was not legitimate, hence, it cannot be found to be pretextual as Plaintiff has not shown the adverse employment action was a result of anything other than a good-faith belief that there was a COVID violation.

### b) Title VII Claim

1) *McDonnel Douglas*

The Magistrate's R&R primarily incorporates a *McDonnel Douglas* analysis to dispose of Plaintiff's Title VII claim. Once more, due to Defendant presenting a nondiscriminatory reason for the adverse employment action, the point of contention lies in whether or not Defendant's termination of Plaintiff, grounded in Plaintiff violating COVID protocol, was pretextual.

9

Plaintiff's prior objections, based in factual disputes, are equally applicable to this analysis. As a result of the FMLA analysis borrowing the Title VII framework, this Court would reach the same analysis in analyzing these objections within this section, therefore such objections are overruled.

As previously noted, *see supra FN 3*, Plaintiff's remaining five pieces of "evidence," from his second objection, are more appropriately addressed within this analysis. This evidence generally alleges that all white management dictated Plaintiff's termination, that Mr. Johnson and Ms. Herron were the only individuals to communicate with Plaintiff, and that Plaintiff has been a longstanding and reliable employee.[7] This evidence does not show that Plaintiff's proffered reason for termination was pretextual. Instead, they are general facts without any legal application and do not create a genuine dispute of material fact. Only a general allegation that Plaintiff's termination sources from all white management even attempts to implicate any potential racial animus. However, Plaintiff does not draw on any law or provide any facts to indicate management's decision was at all racially motivated. Accordingly, these facts are insufficient to create a genuine dispute of material fact. This leaves Plaintiff's tenth and eleventh objections as relevant for purposes of Title VII.

Under the framework of *McDonnel Douglas*, it has been identified that evidence that other employees who were similarly situated to the plaintiff (but for the protected characteristic) were treated more favorably, also known as "comparator evidence," is "especially relevant" to a showing of pretext. *Spencer v. Virginia State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019), as amended (Mar. 26, 2019).

Plaintiff attempts to rebut pretext with an argument founded in "comparator evidence." The R&R concluded that Plaintiff Reddick inadequately established a similarity between comparators, this Court is inclined to agree with the Magistrate's ultimate disposition. The Fourth Circuit requires compared jobs to merely be "similar" and not equal. "*Spencer v. Virginia State*

---

[7]Pieces seven and eight of Plaintiff's "evidence," involve Ronnie Sigmon and other "comparator" based arguments. This "evidence" is adequately addressed later in this order.

*Univ.*, 919 F.3d 199, 207 (4th Cir. 2019), as amended (Mar. 26, 2019). Such similarity reaches the level of the comparator being "valid" when the plaintiff has "produce[d] evidence that the plaintiff and the comparator 'dealt with the same supervisor, were subject to the same standards and ... engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223–24 (4th Cir. 2019); *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). Further, this Circuit has required "[t]he similarity between comparators and the seriousness of their respective offenses [to] be clearly established in order to be meaningful." *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008). Finally, the Fourth Circuit has instructed that a comparability analysis is to consider not only the characteristics of the individual employee (supervisor, job title, subject to the same standards), but also the "comparable seriousness" of the conduct that stimulated the adverse employment action. *Moore v. City of Charlotte, NC*, 754 F.2d 1100, 1107 (4th Cir. 1985).

Plaintiff's eleventh objection[8] claims that Ronnie Sigmon is a valid comparator, as "[t]here are no differentiating or mitigating circumstances between Plaintiff and Ronnie Sigmon." ECF No. 59 at 9-10. In order to support this objection, Plaintiff states both are "hourly employees working in substantially similar manufacturing jobs, full time non-exempt roles, and both had wives ill with COVID-19." ECF No. 59 at 10. Plaintiff contends the only difference being Plaintiff is black and was terminated, where Ronnie Sigmon is white and remains employed. *Id*. Accordingly, Plaintiff argues there is a sufficient showing to survive summary judgment. *Id*. This Court cannot agree with Plaintiff's analysis.

This Court previously allowed Plaintiff's attempt to establish a comparator to survive dismissal, while providing that whether or not the alleged comparators were sufficiently similar would likely be reexamined at the summary judgment stage. ECF No. 38 at 5-6. Defendant

---

[8]This analysis also adequately addresses the seventh piece of "evidence" listed in Plaintiff's second objection. ECF No. 59 at 2-3.

provided details on eight individuals that were terminated as a result of violating COVID protocol, one of which was the Plaintiff. ECF No. 43-5 at 18. In response to this disclosure, Plaintiff adamantly argues that "the facts of those terminations identified by Defendant are distinguishable from the facts of Plaintiff's case." ECF No. 52 at 22. Plaintiff argues the other terminations do not reflect Plaintiff's scenario, as the "white employees who were terminated were themselves sick with COVID-19 and still reported to work anyways or they were residing with a known COVID-19 positive individual and still reported to work anyways." *Id.* Plaintiff claims, "[t]hat did not occur here; Plaintiff did not break the quarantine procedures." *Id*.

Plaintiff is essentially requesting this Court to look solely at Ronnie Sigmon, to ignore the fact that he had a different supervisor, to ignore the fact he had a different job, and rely entirely and wholeheartedly on Plaintiff's own, incredibly vague, deposition testimony that Mr. Sigmon "had the exact situation as" Plaintiff. Even if this Court were to acquiesce to such a request, it cannot understand how that makes Mr. Sigmon any better of a comparator than the four white employees who were terminated for COVID violations. Such vague testimony, null of any other support, fails to "clearly establish" the similarity between Plaintiff and Mr. Sigmon and is insufficient to create a genuine dispute of material fact. Further, Plaintiff's attempt to distinguish Mr. Sigmon and his own situation from the clearly identified situations of other white employees, is rooted in the specific way the Defendant's COVID protocol was violated, or if it was violated at all.

To the former of the arguments, the Court can find no distinction between the violations. While the referenced white employees may themselves have been sick or resided with a known positive individual, the "comparable seriousness" of their offense is identical in this Court's eyes. Plaintiff was subject to the exact same COVID protocol as the terminated white employees, a protocol outlining six detailed scenarios where employees were to stay home from work. ECF No. 43-1 at 6. Further, these employees were constantly reminded of the COVID rules and policies[9]

---

[9]*See* ECF No. 43-1 at 6, discussing that the COVID-19 safety rules and policies were listed on employee badges and displayed on signs throughout Defendant's facility.

and that failure to comply may result in termination. *Id*. The import is the seriousness of the offense, this Court cannot conclude that one of the discussed violations was less serious simply due to unsupported factual allegations. At the end of the day, the same exact policy, with an intent to isolate individuals potentially exposed to COVID, was violated by all of the referenced employees. *Id*. at 5.

The comparable "seriousness" seems particularly on par when you consider the latter of Plaintiff's arguments, that the true distinction is Plaintiff did not violate the COVID policy at all. As discussed, Plaintiff has not shown that Defendant did not have a good faith belief Plaintiff violated the COVID protocol. Instead, Defendant appears to have believed Plaintiff attended work after "being in direct contact with someone who [was] sick with a fever or two or more other COVID-19 symptoms." *Id* at 6. With an understanding that Defendant had a good faith belief Plaintiff actually violated Defendant's policies, this Court cannot conclude "such differentiating or mitigating circumstances" exist so as to distinguish the conduct or treatment of Plaintiff from that which the terminated white employees were subjected to. *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223–24 (4th Cir. 2019); *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). This analysis would vary vastly had Plaintiff shown that Defendant did not have a good faith factual belief that Plaintiff violated company policy.

Accordingly, Plaintiff has failed to show that Sigmon is the only valid comparator. It is undisputed that Defendant terminated white employees, employees who violated the same exact policy as Plaintiff, and in some instances, may have had the same position and direct supervisor as the Plaintiff.[10] Accordingly, this Court finds these employees, all of which are outside of Plaintiff's protected class, engaged in conduct of "comparable seriousness" and are valid comparators. Due to these employees also being terminated for their violations, Plaintiff has failed to show pretext, as these comparators were not treated more favorably than Plaintiff.

---

[10] *See* ECF No. 43-5 at 18, an employee identified as "Corey," was a white employee, with a "Welder" job position and whose direct supervisor may have been Sam Johnson. Corey was terminated for violating the COVID protocol after he attended work when an individual he resided with awaited results from a COVID test.

13

### 2) Mixed-Motive Analysis

To the extent that Plaintiff's second objection is construed to claim the Magistrate failed to conduct an adequate mixed-motive analysis, this Court will conduct a de novo review. A mixed-motive analysis differs from pretext, as the former focuses on showing that "both legitimate and illegitimate reasons motivated the employment decision," and does not require a showing that the proffered legitimate reason was unworthy of credence. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 94–95, 123 S. Ct. 2148, 2151, 156 L. Ed. 2d 84 (2003). A Plaintiff need only make this showing "by a preponderance of the evidence, using direct or circumstantial evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99, 123 S. Ct. 2148, 2154, 156 L. Ed. 2d 84 (2003) (internal quotations omitted).

Anew, Plaintiff's objection reiterates his eight pieces of "evidence" from his *response to Defendant's motion for summary judgment*. ECF No. 52 at 20; ECF No. 59 at 2-3. Plaintiff's "evidence" either: 1) disputes the facts and verification of those facts on which Defendant found a COVID violation, 2) claims Plaintiff was an upstanding employee who was terminated by all white management, and 3) references Ronnie Sigmon as a valid comparator. *Id*.

At this point, this Court has devoted sufficient time and text to analyzing the aforementioned "evidence." Plaintiff has failed to show that Defendant did not, in good-faith, believe Plaintiff had actually violated the company's COVID protocol. While all white management may be rendered circumstantial evidence, it cannot stand alone to allow this Court to infer white management was at all racially motivated. Plaintiff attempts to supplement this argument by alluding to Ronnie Sigmon as a comparator. However, this Court has discussed that Ronnie Sigmon not only may not be the best comparator, but that white employees, understood by Defendant to have broken the same COVID protocol as Plaintiff, were treated identical to Plaintiff. This cannot be understood as sufficient to carry Plaintiff's burden. Even if this was considered to move Plaintiff off the starting line towards his burden, his own deposition testimony states that nobody at A.O Smith discriminated against him on the basis of his race, and nobody employed by Defendant ever made negative or derogatory comments about his race. ECF No. 56 at 8.

An unverified comparator, buttressed by three valid comparators, treated identical to Plaintiff, alongside a general claim that all white management made the decision is not sufficient to create a genuine dispute of material fact on the question of whether Plaintiff's race was a motivating factor in his termination. This rings especially true when considering Plaintiff's allegation is not only void of evidence that management considered his race, but that Plaintiff's sworn testimony states that Defendant's employees never discriminated against him. Accordingly, Plaintiff's objection is overruled.

### 3) *Love-Lane* rooted objection

Lastly, Plaintiff's objection to the R&R's application of *Love-Lane*[11] is wholly without merit. Plaintiff's objection acknowledges that the Fourth Circuit affirmed the grant of summary judgment on Plaintiff Love-Lane's race discrimination claims. ECF No. 59 at 9. Plaintiff Reddick blanketly claims *Love-Lane* should not be considered instructive on the race discrimination claims, but may be instructive in allowing Plaintiff's FMLA claim to survive. *Id*.

*Love-Lane* utilized the *McDonnel Douglas* burden shifting framework and focused in on whether Plaintiff had made an adequate showing of pretext. *Love-Lane v. Martin*, 355 F.3d 766, 787 (4th Cir. 2004). The Court found that Plaintiff's "unsupported opinion" that the adverse employment action was the result of improper discriminatory intent was insufficient to allow any "rational jury" to find Defendant's proffered justification was pretextual. *Id*. This analysis is certainly instructive to Plaintiff Reddick's case as he also failed to provide any evidence of racial discrimination.

Further, the fact that the *Love-Lane* court allowed certain claims to survive, despite dismissal of the discrimination claim, is not at all instructive. Surely, Plaintiff is aware that certain claims in *Love-Lane* survived due to that court finding genuine disputes of material fact within those other claims. This Court is perfectly aware that the dismissal of Plaintiff Reddick's racial discrimination claim has no bearing on the separate FMLA analysis. Instead, this Court is dismissing Plaintiff's FMLA claim for the specific reasons outlined above, not because Plaintiff's

---

[11] *Love-Lane v. Martin*, 355 F.3d 766 (4th Cir. 2004).

discrimination claim is deserving of dismissal. Therefore, Plaintiff's tenth objection is overruled.

### c) Plaintiff's ninth objection

Plaintiff's ninth objection is without merit. Plaintiff alleges that the R&R's use of *Anderson v. Ziehm Imaging, Inc.* is improper. ECF No. 59 at 7-8. The R & R drew on the referenced case to identify law, specifically to identify that "[t]he focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise or well-considered." ECF No. 57 at 14; *Anderson v. Ziehm Imaging, Inc.*, C/A No. 7:09-02574-JMC, 2011 WL 1374794 (D.S.C. Apr. 12, 2011). The court in *Anderson* applied this rule to the specific facts of the case to conclude material issues of fact existed. *Id*.

A true legal argument would attempt to parallel the facts in *Anderson* to the facts at hand, that is not how Plaintiff's ninth objection attempts to use the case. Instead, Plaintiff pleads that the R & R's use of law from a case finding pretext, cannot be used to find an opposite result. ECF No. 59 at 8. The holding is dependent upon the application of the law to the facts. Consequently, Plaintiff's ninth objection is overruled.

### Conclusion

The Court has thoroughly reviewed the entire record, the R&R, objections to the R&R, and applicable law. For the reasons stated above and by the Magistrate Judge, the Court hereby **GRANTS** Defendants' motion for summary judgment, dismissing Plaintiff's claims of race discrimination (Title VII) and FMLA retaliation.

**IT IS SO ORDERED.**

Florence, South Carolina  　　　　　　　　　　s/ R. Bryan Harwell
August 23, 2023  　　　　　　　　　　　　　　R. Bryan Harwell
　　　　　　　　　　　　　　　　　　　　　　Chief United States District Judge

16